UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED G.,<br><br>           Plaintiff,<br><br>    v.<br><br>ANTHEM BLUE CROSS LIFE & HEALTH INSURANCE COMPANY, et al.,<br><br>           Defendants. | Case No. 22-cv-01259-RS<br><br>**ORDER GRANTING MOTION TO TRANSFER** |

## I. Introduction

In this action averring violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), Defendant Directors Guild of America—Producer Health Plan (the "Plan") brings a motion to dismiss for improper venue, or in alternative to transfer the case to the Central District of California. The second defendant, Anthem Blue Cross Life & Health Insurance Company ("Anthem"), has not challenged venue. As explained below, venue is not proper in the Northern District of California as to the Plan, because none of the requirements of ERISA's venue provision, 29 U.S.C. § 1132(e), are met. In contrast, the Central District of California is a proper venue as to both Defendants. Further, even if the Northern District was a proper venue, transfer under 28 U.S.C. § 1404(a) would be appropriate because this litigation appears to have little connection to the Northern District. The Plan's motion to transfer is granted, and the case will be transferred to the Central District of California.

## II. Background

Plaintiff Fred G. is a participant in the Plan, an employee welfare benefit plan. Mental health benefits under the Plan were administered by Anthem. Plaintiff's son J.G., a beneficiary of the Plan, received mental health treatment at a residential treatment center, Catalsyt, in Utah. The Plan and Anthem approved an initial 21-day period of treatment at Catalyst, but denied Plaintiff's claims for further treatment at Catalyst. On February 28, 2022, Plaintiff filed this lawsuit for recovery of benefits due and breach of fiduciary duty under ERISA. On April 8, 2022, the Plan filed this motion to dismiss, or in the alternative, transfer venue. Anthem has not filed a motion to dismiss or otherwise challenged venue.

### III. Rule 12(b)(3) Motion to Dismiss, or in the Alternative Transfer

**A. Legal Standard**

The Federal Rule of Civil Procedure 12(b)(3) governs motions to dismiss for improper venue. The plaintiff has the burden of establishing that venue is proper in the district where the case was filed. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). ERISA is governed by a special venue provision, 29 U.S.C. § 1132(e)(2), which states that venue is proper (1) "where the plan is administered," (2) "where the breach took place," or (3) "where the defendant resides or may be found[.]" 29 U.S.C. § 1132(e)(2).

**B. Discussion**

Although 29 U.S.C. § 1132(e)(2) outlines multiple ways to establish venue in an ERISA case, Plaintiff only argues that venue is proper because the Plan "may be found" in the Northern District. Due to this concession, only the "may be found" prong of 29 U.S.C. § 1132(e)(2) will be addressed. In *Varsic vs. U.S. District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979), the Ninth Circuit held that a defendant may be "found" in a district for the purposes of the ERISA venue provision if the defendant's "contacts with the [district] are sufficient to satisfy the 'minimum contacts' test for personal jurisdiction[.]" 607 F.2d at 248-49 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be established via either general or specific jurisdiction. General

jurisdiction is satisfied if the defendant's interactions with the forum "are so 'continuous and systematic' as to render them essentially at home[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff makes no argument that general jurisdiction applies here, thus leaving only the issue of whether specific jurisdiction applies.[1] There are three requirements to establish specific jurisdiction: "(1) [t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[;] and (3) [e]xercise of jurisdiction must be reasonable." *Varsic*, 607 F.2d at 249 (*quoting Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).

Applying the standard as set out in *Varsic* and *Data Disc*, there are not sufficient contacts in the Northern District. First, there is little indication that the Plan has purposefully conducted activities in the Northern District. Plaintiff argues that "[b]y its own admission, the Plan conducts activities in this Northern District." Opposition to Motion to Dismiss, p.4. Plaintiff, however, never specifies what those "activities" are. Unlike in *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957 (C.D. Cal. 2005), where the plan at issue pre-certified and case-managed treatment in the forum district and paid partial benefits to a hospital in the forum, Plaintiff alleges no such facts concerning any affirmative actions by the Plan towards the Northern District. Plaintiff argues "[t]he Plan acknowledges that a percentage of its members are residents of the San Francisco Bay Area" and thus "the Plan 'may be found' in the Northern District." Opposition to Motion to Dismiss, p.5. Less than one percent of Plan members, however, live in Northern California. *See* Declaration of Lisa Read ("Read Decl."), ¶ 2. In *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804 (7th Cir. 2002), the Seventh Circuit rejected the notion that "the mere presence

---

[1] Further, as described in the discussion of specific jurisdiction, the Plan's contacts with the Northern District of California are minimal, and thus insufficient to demonstrate general jurisdiction.

in a district of participants in a [] plan renders the plan 'found' in the district." *Id.* at 810. Like in this case, in *Waeltz* fewer than one percent of plan participants lived in the forum. The existence of a small number of plan participants, without any additional contacts, is insufficient to establish that a plan has purposefully directed activities towards a forum.

Next, even if the presence of a small number of plan participants in the Northern District was enough to establish purposeful availment, the claim would not be "one which arises out of or results from the defendant's forum-related activities." *Data Disc*, 557 F.2d at 1287. Plaintiff does not allege that he lives in the Northern District.[2] Plaintiff has not identified any acts or events relevant to this case that occurred in the Northern District. Finally, given the absence of any connection between this action and the Northern District, the reasonableness prong of the specific jurisdiction inquiry is also not satisfied. In short, the requirements of specific jurisdiction are not satisfied. The absence of minimum contacts as to the Northern District of California means that the Plan may not be "found" in this district within the meaning of 29 U.S.C. § 1132(e)(2), and thus venue is improper.

If venue is improper in the district where the case is filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Courts have significant discretion in determining whether to dismiss or transfer an action." *Luminence, LLC v. Leach*, No. 20-CV-89-BEN (MDD), 2020 WL 3487822, at *6 (S.D. Cal. June 26, 2020) (internal quotation marks omitted). "In general, transfer is preferable to dismissal. It saves the parties time, energy, money, and inconvenience." *Nat'l Cas. Co. v. Burns & Wilcox Ltd.*, No. CV-19-04854-PHX-DWL, 2020 WL 4039119, at *14 (D. Ariz. July 17, 2020) (citing 14D Wright & Miller, Fed. Practice & Proc. § 3827 (2020)). Here, transfer to the Central District of California is most efficient, and would save time and expense. Plaintiff does not dispute that venue is proper in the Central District. *See*

---

[2] The Plan notes that his address on file with the Plan is in the Central District, but Plaintiff denies that he lives in the Central District, without ever stating where he lives.

Opposition to Motion to Dismiss, p.4 (arguing that "venue in this case is proper in both the Northern District and the Central District"). Indeed, it is "where the plan is administered." 29 U.S.C. § 1132(e)(2); Read Decl., ¶ 5 ("The Plan is wholly administered in Los Angeles.").

Finally, there is the question of how to handle the claims against Anthem, which has not challenged venue. "In the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. One option is to transfer the entire case to another district that is proper for both defendants. Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). Generally speaking, "judicial economy is . . . better served in a single action in [a district] where venue will be proper for all defendants[.]" *Fitzgerald v. Vogel*, No. CIV. 02-7849, 2003 WL 203562, at *3 (E.D. Pa. Jan. 29, 2003). Here, venue is proper as to Anthem in the Central District for the same reason that venue is proper as to the Plan: the Plan is administered in Los Angeles. Judicial economy would be better served by transferring the entire action to the Central District of California.

In sum, the Plan's motion is granted. Instead of dismissing the case, transfer of the entire action to the Central District of California is appropriate.

**IV. Motion to Transfer under 28 U.S.C. § 1404(a)**

In the alternative, even if venue was proper in the Northern District, transfer to the Central District would be appropriate under 28 U.S.C. § 1404(a). "[A] district court may transfer any civil action to any other district or division where it might have been brought" if it is "[f]or the convenience of the parties and witnesses, [and] in the interest of justice[.]" 28 U.S.C. §1404(a). As discussed above, this action could have been brought in the Central District of California. Whether transfer under § 1404(a) would also be appropriate thus turns on convenience and the interest of justice. The Ninth Circuit has identified nine factors to consider in this analysis:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Here, multiple factors weigh in favor of transfer. It appears that most, if not all, of the relevant agreements were negotiated and executed in the Central District. All parties have more contacts with the Central District than the Northern District, given that the Plan is administered in the Central District, and Plaintiff even lists an address in the Central District in Plan documents, indicating a connection to that district. Further, as explained above, there are no contacts relating to Plaintiff's cause of action in the Northern District, but there are plenty in the Central District. To the extent there are any issues with ease of access to sources of proof, access would likely be easier in the Central District, where the Plan is administered. Similarly, given the availability of remote depositions and proceedings, issues concerning of the availability of compulsory process may not arise, but it does appear that more of the relevant witnesses are in the Central District, as compared to the Northern District.

The other factors lean slightly in Plaintiff's favor or appear neutral. Plaintiff did choose to litigate in the Northern District, but in an ERISA case "where a plaintiff does not reside in the forum and the operative facts occurred outside the forum, the Court may afford his choice [of forum] considerably less weight." *Ansari v. UnitedHealthcare Ins. Co.*, No. LACV1904068JAKJPRX, 2019 WL 6729716, at *3 (C.D. Cal. Sept. 25, 2019) (internal quotation marks and citation omitted). Further, while costs may be lower in the Central District due to proximity to witnesses, both the Plan and Plaintiff have retained San Francisco-based lawyers. As for the state familiar with the governing law, the factor is neutral since this case involves the application of federal law, and even if transferred the case would remain in the same state.

In conclusion, weighing the factors shows that transferring the case to the Central District of California would be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice[.]" 28 U.S.C. §1404(a). If dismissal or transfer was not required under 28 U.S.C. § 1406(a) and 29 U.S.C. § 1132(e)(2), transfer under 28 U.S.C. § 1404(a) would be appropriate.

## V. Conclusion

For all the foregoing reasons, the Plan's motion is granted and this case will be transferred to the Central District of California.

**IT IS SO ORDERED**.

Dated: August 10, 2022

_____
RICHARD SEEBORG
Chief United States District Judge